STATE OF NORTH CAROLINA v. BRIAN W. RHODES, JR.

No. COA11-1355

(Filed 3 April 2012)

**Criminal Law—new trial—newly discovered evidence—due diligence—different result probable**

The trial court did not abuse its discretion in a possession of drugs and drug paraphernalia case by awarding defendant a new trial based upon newly discovered evidence. The confession by defendant's father that the drugs and drug paraphernalia discovered by police were his constituted newly discovered evidence, defendant used due diligence and proper means to attempt to procure the testimony at trial, and the evidence was sufficient to support the trial court's conclusion that the newly discovered evidence would probably result in a different outcome at a new trial.

Appeal by State from order entered 29 July 2011 by Judge Richard Stone in Rockingham County Superior Court. Heard in the Court of Appeals 7 March 2012.

*Attorney General Roy Cooper, by Assistant Attorney General Kimberly N. Callahan, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Daniel R. Pollitt, for Defendant-appellee.*

HUNTER, JR., Robert N., Judge.

The State appeals from the trial court's order setting aside Defendant's convictions and awarding Defendant a new trial based upon newly discovered evidence. After careful review, we affirm.

## I. Factual & Procedural Background

On 5 March 2010, a Rockingham County jury convicted Brian Wendell Rhodes, Jr. ("Defendant") on charges of possession with intent to manufacture, sell, or deliver cocaine and possessing drug paraphernalia. The State's evidence at trial, as summarized in this Court's prior unpublished decision, *State v. Rhodes*, No. COA10-784 (N.C. App. January 4, 2011), *appeal dismissed, disc. rev. denied*, 365 N.C. 196, 709 S.E.2d 921 (2011), tended to show the following:

On 6 February 2008, Lieutenant David Frizzell of the Reidsville Police Department ("Lieutenant Frizzell") went to 1001 Fawn Circle in Reidsville, North Carolina, to execute a search warrant. The subjects of the search warrant were the defendant and his father, Brian Rhodes, Sr. ("Rhodes"). Officers knocked on the door and announced their presence and then used a battering ram to open the locked door. Defendant, who Lieutenant Frizzell described as argumentative, was ordered to the floor and restrained with handcuffs. Officers then began searching the residence for narcotics.

Sergeant Jimmy Hutchens of the Reidsville Police Department ("Sergeant Hutchens") assisted with the execution of the search warrant. Sergeant Hutchens testified that during the search, while defendant was restrained, he noticed that defendant was having difficulty breathing. Defendant asked Sergeant Hutchens for his medication, and Sergeant Hutchens asked defendant where he kept the medication. Defendant told Sergeant Hutchens that "it was in his bedroom, which was to the left at the top of the stairs." Sergeant Hutchens relayed the information to Lieutenant Frizzell, who retrieved defendant's medication from on top of a dresser in the bedroom and threw it downstairs to Sergeant Hutchens. Sergeant Hutchens then gave the medication to defendant.

After retrieving defendant's medication, Coumadin, Lieutenant Frizzell searched the room in which he found defendant's medication. Officer Woody Hutchens ("Officer Hutchens") of the Reidsville Police Department assisted him with the search. Officer Hutchens located "a shoebox in the top of the closet with a white, powdery substance in it, as well as a green vegetable, leafy substance." Officer Hutchens also found a black bag inside the shoebox that had a large bag of white powder, a strainer, scales, and cash. Officer Hutchens next searched the dresser from where Lieutenant Frizzell had retrieved defendant's medication. Officer Hutchens found defendant's identification on the dresser. Defendant's identification had been issued three months earlier, and it listed defendant's address as 1001 Fawn Circle in Reidsville, North Carolina. Finally, inside the dresser, Officer Hutchens found "a black box with a small bag that appeared to be crack rocks in it."

*Id.* at *1.

Defendant's evidence at trial tended to show that Defendant was not living with his parents and sister at their residence in Reidsville on the evening of 6 February 2008, when the police searched and discovered drugs and drug paraphernalia at that residence. Defendant's mother ("Mrs. Rhodes") testified that Defendant had lived in Greensboro since 2006, that Defendant was visiting on the night in question, and that Defendant had been in the house for "[p]robably about five or ten minutes" when the police arrived to execute the search warrant. Mrs. Rhodes further testified that the cocaine and marijuana recovered by the police during their search of the residence did not belong to her or Defendant. Defendant's father ("Mr. Rhodes") also took the stand and testified that the drugs recovered by the police did not belong to Mrs. Rhodes or Defendant. Mr. Rhodes admitted that he had been convicted of various drug-related offenses over the course of the past ten years and, when asked whether the drugs found by the police were his, Mr. Rhodes replied: "I plead the Fifth."

The jury convicted Defendant on all charges, and the trial court sentenced Defendant to six to eight months' imprisonment. Judge Stone suspended Defendant's sentence and placed Defendant on supervised probation for a period of thirty months. Defendant appealed his convictions to this Court, and we found no error in Defendant's trial. *Id.* The North Carolina Supreme Court subsequently denied Defendant's petition for discretionary review. *See State v. Rhodes*, 365 N.C. 196, 196, 709 S.E.2d 921, 921-22 (2011).

On 28 May 2010, Defendant filed a motion for appropriate relief in Rockingham County Superior Court and moved for a new trial based upon newly discovered evidence. In his motion, Defendant alleged that following his convictions on the drug charges, Mr. Rhodes confessed to a probation officer that the drugs and drug paraphernalia that had served as the basis for Defendant's convictions actually belonged to him.

Defendant's motion for appropriate relief came before Judge Stone at a hearing held on 25 July 2011. Defendant testified that when he went to report at the probation office following his convictions on the drug charges, Mr. Rhodes accompanied him and informed one of the probation officers at the office that the drugs in question were his. Virginia Bullins, the probation officer to whom Mr. Rhodes allegedly confessed, also testified at the hearing and corroborated Defendant's testimony.

By order entered 29 July 2011, the trial court concluded that Mr. Rhodes' confession to Officer Bullins "is newly discovered evidence, clearly pointing to the guilt of another." The trial court set aside Defendant's convictions and awarded Defendant a new trial. The State filed its notice of appeal with this Court on 1 August 2011.

## II. Jurisdiction

This appeal is properly before us, as the State appeals from the superior court's order granting a new trial based upon newly discovered evidence as a matter of right. *See* N.C. Gen. Stat. § 15A-1445(a)(2) (2011); *see also State v. Monroe*, 330 N.C. 433, 436, 410 S.E.2d 913, 915 (1991) (holding that N.C. Gen. Stat. § 15A-1445(a)(2) "grants the State an absolute right to appellate review of a superior court order granting defendant a new trial on the ground of newly discovered evidence").

## III. Analysis

The State contends the trial court erred when it granted Defendant's motion for appropriate relief and awarded Defendant a new trial based upon newly discovered evidence. For the reasons that follow, we disagree with the State's contentions, and we hold the trial court did not abuse its discretion in awarding Defendant a new trial based on the new evidence.

### A. Standard of Review

To prevail on a motion for appropriate relief based on newly discovered evidence, a criminal defendant must establish the following:

> (1) [A] witness or witnesses will give newly discovered evidence; (2) the newly discovered evidence is probably true; (3) the evidence is material, competent and relevant; (4) due diligence was used and proper means were employed to procure the testimony at trial; (5) the newly discovered evidence is not merely cumulative or corroborative; (6) the new evidence does not merely tend to contradict, impeach or discredit the testimony of a former witness; and (7) the evidence is of such a nature that a different result will probably be reached at a new trial.

*State v. Beaver*, 291 N.C. 137, 143, 229 S.E.2d 179, 183 (1976). The defendant has "the burden at the hearing on his motion for appropriate relief 'of establishing the facts essential to his claim by a preponderance of the evidence.' " *State v. Hardison*, 143 N.C. App. 114,

120, 545 S.E.2d 233, 237 (2001) (citation omitted); N.C. Gen. Stat. § 15A-1420(c)(5) (2011).

> "The decision of whether to grant a new trial in a criminal case on the ground of newly discovered evidence is within the trial court's discretion and is not subject to review absent a showing of an abuse of discretion. Findings of fact made by the trial court are binding on appeal if they are supported by the evidence."

*State v. Stukes,* 153 N.C. App. 770, 773, 571 S.E.2d 241, 244 (2002) (quoting *State v. Wiggins,* 334 N.C. 18, 38, 431 S.E.2d 755, 767 (1993)). The question of whether there is sufficient evidence to support a factual finding entered by the trial court is a question of law, and thus fully reviewable on appeal. *See State v. Wilkins,* 131 N.C. App. 220, 223, 506 S.E.2d 274, 276 (1998). Accordingly, we undertake a *de novo* review of the questions of law presented by the State's appeal in the instant case, while affording great deference to the trial court's conclusions on these questions as required under our abuse of discretion standard.

Before applying our standard of review in the case *sub judice,* however, we note that in its order the trial court labeled two determinations as both findings of fact and conclusions of law. The trial court found as fact, *inter alia,* the following:

> The confession to the probation officer is newly discovered evidence[.]
>
> . . . .
>
> The newly discovered evidence is probably true.

These "findings of fact," which are also labeled by the trial court as "conclusions of law," reflect two of the seven requirements that must be established by a criminal defendant in moving for appropriate relief based upon newly discovered evidence. *See Beaver,* 291 N.C. at 143, 229 S.E.2d at 183. In its order, the trial court's conclusions of law mirror these seven requirements. A determination that the defendant has met his burden in satisfying one of these requirements involves the application of legal principles and judicial reasoning and is more properly classified as a conclusion of law. *See In re Helms,* 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997). We therefore reclassify these mislabeled "findings of fact" as conclusions of law and apply our standard of review accordingly. *See N.C. State Bar v. Key,* 189 N.C. App. 80, 88, 658 S.E.2d 493, 499 (2008) ("[C]lassification of an item within the order is not determinative, and, when necessary, the

appellate court can reclassify an item before applying the appropriate standard of review.").

## B. The State's Appeal

The State first contends Defendant failed to produce newly discovered evidence because the information revealed by Mr. Rhodes' confession could have been elicited through due diligence at trial. We disagree.

Defendant was required to establish before the trial court that a "witness or witnesses will give newly discovered evidence," and, further, that "due diligence was used and proper means were employed to procure the testimony at trial." *Beaver*, 291 N.C. at 143, 229 S.E.2d at 183. "Newly discovered evidence is evidence which was in existence but not known to a party at the time of trial." *State v. Nickerson*, 320 N.C. 603, 609, 359 S.E.2d 760, 763 (1987).

In the instant case, Defendant offered Officer Bullins' testimony regarding Mr. Rhodes' confession as newly discovered evidence. Mr. Rhodes did not admit to exclusive ownership of the drugs in question until after Defendant's trial. As an out of court statement against interest, the defense would have been able to examine Mr. Rhodes during its case regarding this issue. *See* N.C. Gen. Stat. § 8C-1, Rule 804(b)(3) (2011). Without this admission the evidence of ownership of the drugs was ambiguous as to whether Defendant, Mr. Rhodes, or both Defendant and Mr. Rhodes owned or possessed the drugs. Officer Bullins' testimony regarding Mr. Rhodes' confession is therefore newly discovered evidence.

Moreover, the defense exercised due diligence in attempting to procure this information at trial by calling Mr. Rhodes as witness and specifically asking him whether the drugs in question were his. Mr. Rhodes elected to exercise his constitutional right against self-incrimination, prompting the trial court to excuse Mr. Rhodes as a witness and thus ensuring that defense counsel would have no further opportunity to elicit testimony from Mr. Rhodes.

The defense also called Mrs. Rhodes as a witness, and the following exchange took place between defense counsel and Mrs. Rhodes on redirect examination:

> [Defense counsel]: The cocaine. Was the cocaine and marijuana, was it yours?
>
> [Mrs. Rhodes]: No.

**STATE v. RHODES**

[219 N.C. App. 599 (2012)]

[Defense counsel]: Okay. Was it Mr. Rhodes?

[Mrs. Rhodes]: I'm not going to answer that. That's my husband.

[Defense counsel]: No, I'm saying your son.

[Mrs. Rhodes]: Oh, no.

While it is true defense counsel did not press Mrs. Rhodes on the question of whether the drugs in question belonged to Mr. Rhodes, it is clear from the preceding exchange that Mrs. Rhodes was unwilling to implicate her husband and that any attempt to elicit this information would have been futile. We also note that defense counsel did not ask Defendant during his trial testimony whether the drugs belonged to Mr. Rhodes. However, Defendant may not have known who possessed the drugs, and, moreover, we cannot say that defense counsel's failure to cast aspersions upon Mr. Rhodes to the maximum extent possible equates to a lack of due diligence. We hold the trial court did not err in concluding that Defendant established the due diligence requirement.

The State next takes issue with the trial court's conclusion that Mr. Rhodes' confession was "probably true." *See Beaver*, 291 N.C. at 143, 229 S.E.2d at 183. The State insists that the trial court was presented with insufficient evidence to make this determination. We disagree. As the State concedes, "it is for the trial court to assess the credibility of a witness." *State v. Williamson*, ___ N.C. App. ___ , ___ , 698 S.E.2d 727, 731 (2010), *vacated on other grounds*, 365 N.C. 326, ___ S.E.2d ___ (2011). Judge Stone presided over Defendant's trial and was intimately familiar with the circumstances of the case. In addition, Judge Stone took judicial notice of Mr. Rhodes' "history of violating drug laws in the past," which was information previously revealed during defense counsel's direct examination of Mr. Rhodes at trial. Accordingly, we hold the trial court did not err in concluding that the newly discovered evidence is probably true.

The State further contends that Mr. Rhodes' confession would not exculpate Defendant in a new trial. *See Beaver*, 291 N.C. at 143, 229 S.E.2d at 183 (requiring the new evidence be "of such a nature that a different result will probably be reached at a new trial"). We disagree.

The jury in the instant case could have concluded based on the circumstances that Defendant, Mr. Rhodes, or Defendant and Mr. Rhodes owned or possessed the drugs in question. However, while a jury may draw adverse inferences against parties to *civil actions* when

**STATE v. RHODES**

[219 N.C. App. 599 (2012)]

they assert their Fifth Amendment right against self-incrimination, *see Baxter v. Palmigiano*, 425 U.S. 308, 318 (1975), the Fifth Amendment does not permit the jury to draw such inferences in a criminal case. *See Namet v. United States*, 373 U.S. 179; 185-86 (1963). Thus, the jury here was not permitted to infer from Mr. Rhodes' exercise of his Fifth Amendment rights that he owned or possessed the drugs in question. *See State v. Pickens*, 346 N.C. 628, 639, 488 S.E.2d 162, 168 (1997). The jury was presented with no evidence other than the circumstances under which the drugs were recovered to determine who owned or possessed them. With this new evidence—Mr. Rhodes' confession—a new jury would now have an affirmative statement that Mr. Rhodes alone possessed the drugs. We hold this evidence is sufficient to support the trial court's conclusion that the newly discovered evidence would probably result in a different outcome at a new trial.

### IV. Conclusion

We have carefully reviewed Defendant's remaining arguments, and we conclude they are without merit. Therefore, as we have determined the trial court did not err in concluding that Defendant met his burden with respect to each of the seven requirements for a new trial on grounds of newly discovered evidence, we hold that the trial court did not abuse its discretion in granting Defendant's motion for appropriate relief and awarding Defendant a new trial.

For the foregoing reasons, we affirm the order of the trial court.

Affirmed.

Judge BEASLEY concurs.

Judge BRYANT concurs in the result only.